UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ANITA WILLIAMS,

                           Plaintiff,                  MEMORANDUM
                                                                AND ORDER
    -against-

                                                                00 CV 1251 (RML)

MUHAMMAD'S HOLY TEMPLE OF
ISLAM, INC., *et al.*,

                           Defendants.
--------------------------------------------------------X

LEVY, United States Magistrate Judge:

        This case is before me on consent of the parties, pursuant to 28 U.S.C. § 636. A jury trial is scheduled to commence on March 20, 2006. Presently before the court are the parties' motions *in limine.*

## BACKGROUND

        Plaintiff Anita Williams, a former member and volunteer recording secretary of the Staten Island chapter of Muhammad's Holy Temple of Islam, brought this case in March 2000, alleging that she was "stalked, sexually assaulted, battered, molested, threatened, intimidated and sexually harassed" by defendant Benjamin Chavis,[1] the East Coast Regional Minister of Mohammad's Mosque # 7, the regional headquarters of Muhammad's Holy Temple of Islam, Inc., a not-for-profit religious corporation. (First Amended Complaint, filed July 26, 2000 ("First Amended Compl."), ¶¶ 3, 5, 13, 15, 19.) According to the complaint, defendant Chavis's "inappropriate and unlawful conduct was condoned rather than condemned" by defendants Muhammad's Holy Temple of Islam, Inc. and Abdul Sharrieff Mohammad, a

---

[1] In their papers, defendants refer to defendant Chavis as Benjamin Muhammad.

"Supreme Captain, director, manager, officer, investigator and/or employee" of Muhammad's Holy Temple of Islam. (Id. ¶¶ 8, 19.) Plaintiff brings claims for battery, intentional infliction of emotional distress, and negligent hiring, supervision and retention. (Id. at 14-19.)[2]

Plaintiff moves *in limine* to exclude evidence concerning (1) the psychiatric history of her family members; (2) plaintiff's relationship with her estranged husband; (3) plaintiff's verbal and e-mail communications with Minister Robert Muhammad concerning their relationship; (4) plaintiff's "purportedly intimate relationships with other men"; (5) plaintiff's "purportedly violent propensities"; and (6) references to plaintiff's telephone records. In addition, defendants Muhammad's Holy Temple of Islam, Inc. and Abdul Sharrief Muhammad ("defendants") move *in limine* to exclude evidence of (1) plaintiff's letters of complaint to Muhammad's Holy Temple of Islam, Inc.; (2) Monique Swift's letter of complaint to Muhammad's Holy Temple of Islam, Inc.; and (3) plaintiff's conversations with defendant Chavis and other persons. Each issue will be addressed in turn.

## DISCUSSION

The purpose of a motion *in limine* is to enable the court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. See Luce v. United States, 469 U.S. 38, 41 n. 4 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996); TVT Records v. Island Def Jams Music Group, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003). However, it is common for courts to reserve judgment on a motion *in limine* until trial so that the motion can be

---

[2] By order dated July 6, 2005, the court granted defendants' motion for summary judgment with respect to plaintiff's claim for negligent infliction of emotional distress.

placed in the appropriate factual context. United States v. Chan, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002) (citations omitted). Indeed, many courts have found that it is the better practice to deal with questions of admissibility as they arise. See TVT Records, 250 F. Supp. 2d at 344 (noting with dismay that the "parties seek to employ their *in limine* motions as preemptive weapons with which they endeavor to strike in shotgun fashion at whole topics and sources of prospective evidence" that may or may not ever be introduced as evidence at trial). Moreover, any ruling on a motion *in limine* is "subject to change when the case unfolds." Luce, 469 U.S. at 41. This Memorandum and Order is therefore only a preliminary ruling on whether the evidence challenged may be presented at trial.

1. Psychiatric History of Plaintiff's Family Members

During discovery, defendants' counsel elicited deposition testimony, over objection, from plaintiff and from non-party witness Lovette Harvey-Love concerning the psychiatric history of plaintiff's mother, sister, and maternal aunt. Ms. Harvey-Love also apparently testified to her belief that plaintiff is "crazy."[3] Plaintiff seeks to exclude this evidence, pursuant to Fed. R. Evid. 403, as prejudicial and irrelevant to her claims. (Plaintiff's Motion in Limine, dated Nov. 28, 2005 ("Pl.'s Mem."), at 1.) Defendants object to the motion, arguing that this evidence "has direct bearing on Plaintiff's state of mind, motive and behavior based upon the factual allegations in her Complaint." (Defendants' Opposition to Plaintiff's Motion in Limine, dated Dec. 12, 2005 ("Defs.' Opp."), at 1.) Defendants also contend that Ms. Harvey-Love's "opinion as to Plaintiff's mental state is permissible as opinion testimony by a

---

[3] Plaintiff did not attach copies of the deposition transcripts for the court's review. For purposes of deciding the current motions, the court accepts plaintiff's uncontradicted characterization of the testimony.

lay witness under Federal Rule of Evidence 701" and is "based upon first hand perception as a result of her longstanding friendship with plaintiff. . . ." (Id. at 2.)

As an initial matter, the court is hard-pressed to understand how the psychiatric history of plaintiff's relatives bears on the facts of this case or on plaintiff's state of mind, motive, or behavior. Neither party has stated an intent to call plaintiff's mother, sister or aunt as a witness. Nor, absent expert testimony to support it, would this court permit even a vague suggestion that plaintiff suffered from a psychiatric condition, hereditary or otherwise. Moreover, a proponent of lay opinion testimony bears a "heavy burden." Abdus-Sabur v. Port Authority of New York and New Jersey, No. 00 CIV. 5496, 2001 WL 1111984, at *3 (S.D.N.Y. Sept. 20, 2003). Fed. R. Evid. 701 provides:

> If the witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

A lay witness's opinion that another person is "crazy" does not meet these criteria. The witness may describe what she observed, but may not provide an opinion regarding the plaintiff's mental state, or the mental state of plaintiff's mother, sister or aunt. Plaintiff's motion is granted on this point.

    2. Plaintiff's Relationship with Her Estranged Husband

In her deposition, Ms. Harvey-Love testified about events that occurred before and during plaintiff's marriage to Kenya Muhammad, from whom plaintiff is separated. (See Pl.'s Mem. at 2.) According to Ms. Harvey-Love's testimony, plaintiff was pregnant when she

married Mr. Muhammad, and shortly after marrying him began complaining about her husband's "immaturity." (Id. (citing Deposition of Lovette Harvey-Love at 8).) Ms. Harvey-Love also testified that plaintiff's husband was unfaithful, and that he beat plaintiff when she confronted him about his adultery. (Id. (citing Deposition of Lovette Harvey-Love at 10-11.))[4] Plaintiff seeks to exclude this evidence, pursuant to Fed. R. Evid. 403, arguing that its probative value, if any, is outweighed by its potential prejudice. (Id.)

Defendants argue that this testimony is relevant because "plaintiff has made her marriage a pivotal issue in this case" and "there are numerous letters in which Plaintiff discusses the estranged relationship she had with her husband and its effect on her well-being." (Def.'s Opp. at 2.) Defendants also point to plaintiff's allegations, both in her complaint and in letters, that her husband was the subject of coercion and intimidation by agents of Muhammad's Holy Temple. (Id.; see also First Amended Compl.¶ 14 (alleging that plaintiff and her husband "were instrumental in establishing the first Staten Island branch of Muhammad's Holy Temple of Islam"); ¶ 34 (alleging that in or about August 1999 plaintiff's husband met with defendant Chavis in front of the Mosque and told him to stay away from his wife and children); ¶ 35 (alleging that defendant Chavis approached plaintiff and her husband in August 1999 and "asked how they were doing, deliberately provoking Plaintiff's husband"); ¶ 37 (alleging that on or about October 22, 1999, defendant Chavis instructed plaintiff's husband to convince plaintiff to drop her charges against Chavis); ¶ 21 (alleging that on or about November 30, 1999 plaintiff met with defendant Chavis "to seek his ministry and counseling concerning marriage difficulties

---

[4] Again, because plaintiff has not provided a copy of the deposition transcript, the court accepts her uncontroverted description of the testimony for purposes of the instant motion.

she and her husband were then experiencing.")

Based on the foregoing, it would appear that plaintiff has placed her relationship with her husband in issue. Moreover, plaintiff has brought a claim for intentional infliction of emotional distress, which requires her to prove "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." <u>Gonzalez v. Bratton</u>, 147 F. Supp.2d 180, 194 (S.D.N.Y. 2001). To satisfy the element of causation, plaintiff must prove that her severe emotional distress resulted from defendants' conduct, and not from the conduct of third parties or other events. Thus, to the extent plaintiff's relationship with her husband affected her emotional condition, the nature of that relationship is relevant to plaintiff's claims and is admissible, assuming it does not violate the hearsay rule.[5] I find that any potential prejudice to plaintiff does not outweigh the probative value of this evidence.

---

[5] Plaintiff suggests that this evidence is irrelevant because the specific events Ms. Harvey-Love described took place "prior to Plaintiff's move to New York City and her meeting Benjamin Chavis." (Pl.'s Mem. at 2.) However, plaintiff herself alleges that she discussed her marital problems with defendant Chavis. Presumably, then, those problems were ongoing and continued throughout the period described in the complaint.

Plaintiff also argues that this evidence is inadmissible because defendants have not expressed an intent to call an expert to testify that plaintiff's relationship with her husband affected her emotional state. (<u>Id.</u>) It is well-settled that New York courts do not require medical evidence in order to establish the third and fourth elements of intentional infliction of emotional distress. <u>Fusco v. Cohen</u>, No. 92-CV-1525, 1997 WL 473061, at *1 (N.D.N.Y. Aug. 7, 1997); <u>see also</u> <u>Murphy v. Murphy</u>, 486 N.Y.S.2d 457, 459 (3d Dep't 1985) (the existence of severe emotional distress and proximate cause may be inferred without expert medical evidence where plaintiff provides his or her own evidence of distress). If plaintiff is not required to prove causation via expert testimony, then defendants cannot be required to refute plaintiff's causation evidence with expert testimony. On both sides, reasonable inferences are permissible.

3. Plaintiff's Verbal and E-mail Communications
   with Minister Robert Muhammad

During discovery, defendants adduced certain evidence concerning plaintiff's relationship with Minister Robert Muhammad, who was responsible for the Nation of Islam's prison ministry. Ms. Harvey-Love testified in her deposition that plaintiff had an intimate relationship with Minister Robert Muhammad. (Pl.'s Mem. at 4 (citing Harvey-Love Dep. at 31).) Minister Robert Muhammad, who is married, testified in his deposition that he did not have a physical or romantic relationship with plaintiff, but that the two were "very close" and he considered plaintiff a "good friend." (Id. (citing Deposition of Minister Robert Muhammad ("Robert Dep.") at 33, 44).) He also apparently testified that plaintiff often said she "really wanted to get intimate with him" (id. (citing Robert Dep. at 13)), but that he declined her advances, and she respected his decision. (Id. (citing Robert Dep. at 22-23).) Defendants have also produced e-mails purportedly from plaintiff to Minister Robert Muhammad, including one in which she stated that she was "crazy in love" with him. (Id.) Plaintiff argues that this evidence is highly prejudicial and has no bearing on defendant Chavis's conduct toward plaintiff. She also contends that the e-mail evidence is "markedly skewed" because defendants have failed to produce copies of e-mails sent by Minister Robert Muhammad to plaintiff, despite promises to do so. (Id. at 5.)

Defendants argue that this evidence is relevant because "plaintiff has made moral conduct and the rules governing moral conduct central issues of significant consequence in this case." (Defs. Mem. at 3.) They further contend that, because "plaintiff's conduct with Minister Robert Muhammad . . . occurred at the same time as her allegations of misconduct by Defendant Benjamin Chavis," this evidence is "directly relevant to the credibility of her allegations." (Id.)

Federal Rule of Evidence 412 states that in cases involving alleged sexual misconduct, evidence that the alleged victim "engaged in other sexual behavior" or had a particular "sexual predisposition" is presumptively inadmissible unless "its probative value substantially outweighs the danger of harm. . . ." In addition, "[e]vidence of an alleged victim's reputation is admissible only if it has been placed in controversy by the alleged victim." Fed. R. Evid. 412. This Rule's expanded protection "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." Wolak v. Spucci, 217 F.3d 157, 159 (2d Cir. 2000) (quoting Fed. R. Evid. 412, Advisory Committee Notes to 1994 Amendments). See also Winsor v. Hinckley Dodge, Inc., 79 F.3d 996, 1001 (10th Cir. 1996) (a plaintiff's "private and consensual sexual activities do not constitute a waiver of his or her legal protections against unwelcome and unsolicited sexual harassment").

Based on the parties' submissions, I find that evidence concerning plaintiff's relationship with or advances toward Minister Robert Muhammad is irrelevant except to prove a sexual disposition of plaintiff, a purpose plainly forbidden by Rule 412. Defendants do not explain how plaintiff's conduct toward Minister Robert Muhammad relates to Chavis's alleged behavior. Accordingly, plaintiff's motion is granted on this point.

4. Plaintiff's Purportedly Intimate Relationships with Other Men

In her deposition, Ms. Harvey-Love testified that plaintiff had extra-marital sexual relationships with four men, including Minister Robert Muhammad. (Pl.'s Mem. at 6.) Plaintiff urges the court to exclude this evidence pursuant to Fed. R. Evid. 412. In opposition,

-8-

defendants reiterate their contention that plaintiff "has made improper behavior and moral conduct central to her claims." (Defs.' Mem. at 3.) For the reasons stated in Point 3 above, this evidence is excluded.

5. Evidence of Plaintiff's Purportedly "Violent Propensities"

In her deposition, Ms. Harvey-Love described a violent confrontation between plaintiff and her husband, and an incident in which plaintiff purportedly chased her step-mother-in-law out of her house with a knife. (Pl.'s Mem. at 7 (citing Harvey-Love Dep. at 10, 73-74).) Ms. Harvey-Love did not witness these events, but claims that plaintiff told her about them. (Id. (citing Harvey-Love Dep. at 101.) Citing Federal Rules of Evidence 402 and 403, plaintiff seeks to exclude this evidence as "prejudicial, confusing and a waste of time." Id. Defendants argue that the evidence is admissible under Fed. R. Evid. 701, because it "bears directly on [Ms. Harvey-Love's] lay opinion, which characterizes Plaintiff's mental and emotional state as 'crazy.'" (Defs.' Mem. at 4.) As explained above, a lay witness's opinion that another person is "crazy" does not meet the criteria set out in Rule 701. Since defendants have asserted no other basis for admitting this testimony, it is excluded except to the extent that the description of the confrontation between plaintiff and her husband bears on the nature of their relationship, which plaintiff has herself put in issue. For the reasons stated above, evidence concerning that altercation is not excluded at this time.

6. References to Plaintiff's Telephone Records

Plaintiff contends that, while she timely complied with defendants' discovery requests for telephone record authorizations, defendant Muhammad's Holy Temple of Islam failed to provide authorizations for Mosque # 7's office phone records and for defendant

-9-

Chavis's cell phone, which Mosque # 7 supplied and paid for, until 2005, by which point the phone company had destroyed the records. Plaintiff points to court conferences in which defendant Muhammad's Holy Temple of Islam and Mosque # 7 were directed to produce authorizations for cell and telephone records. (See, e.g., Order dated Sept. 10, 2002 ("the parties agree that defts will produce authorizations for telephone records from Muhammad's Holy Temple and from Muhammad's Mosque # 7 from 7/1/99 - 11/1/99").) She argues that introducing evidence of only plaintiff's phone calls to defendant Chavis, and not his to her, would be "confusing and prejudicial" and that "the appropriate sanction for Defendant's deliberate refusal to timely provide authorization for telephone records is to preclude Defendants from presenting evidence derived from Plaintiff's phone records. . . ." (Pl.'s Mem. at 9.)

Defendants deny that they violated any court orders and contend that plaintiff was less than diligent in seeking the telephone records until November 9, 2004, when she filed an Order to Show Cause. (Defs.' Opp. at 5.) However, defendants concede that plaintiff requested the authorizations in 2002 and they do not deny that they agreed to produce them at the conference before me on September 10, 2002. (Id.) I find that plaintiff would be unduly prejudiced by the introduction of, or references to, her telephone records absent the opportunity to obtain telephone records pertaining to defendant Chavis. Plaintiff's motion is therefore granted on this point.

7. Plaintiff's Letters of Complaint to Muhammad's Holy Temple of Islam, Inc.

Defendants seek to exclude five letters from plaintiff to representatives of Muhammad's Holy Temple of Islam, dated July through December 1999, in which she complains of defendant Chavis's conduct. The letters are attached to defendants' Memorandum

of Law as Exhibit B, and are addressed to defendant Abdul Sharrieff Muhammad,[6] Sister Regional Captain Karriemah Muhammad, National Sister Captain Aishah Muhammad, and Minister Louis Farrakhan, the Nation of Islam's National Representative. Defendants argue that the letters are irrelevant to plaintiff's claims of negligent hiring, supervision and retention and constitute inadmissible hearsay. (Memorandum of Law in Support of Defendans' Muhammad's Holy Temple of Islam, Inc. and Abdul Sharrieff Muhammad's Motion to Preclude, dated Nov. 28, 2005 ("Defs.' Mem.") at 5-6.) Plaintiff counters that this correspondence, and testimony concerning it, is admissible "to prove notice and demonstrate Defendant Muhammad Holy Temple's negligent supervision, retention and investigation of Defendant Benjamin Chavis." (Plaintiff's Opposition to Defendants' Motions in Limine, dated Dec. 12, 2005 ("Pl.'s Opp."), at 4-5.)

To prove a claim of negligent hiring, supervision or retention under New York law, a plaintiff must offer evidence that the defendant "'knew or should have known of the employee's propensity for the conduct which caused the injury.'" (Order of the Honorable Sandra J. Feuerstein, U.S.D.J., dated July 6, 2005, at 23 (quoting <u>Kenneth R. v. Roman Catholic Diocese of Brooklyn</u>, 229 A.D. 2d 159, 165, 654 N.Y.S. 2d 791 (2d Dep't 1997).) As Judge Feuerstein explained in her decision denying defendants' motion for summary judgment, evidence that the Holy Temple of Islam had actual or constructive notice of Chavis's alleged propensity to sexually assault and harass female co-workers is relevant to this claim. (<u>Id.</u> at 25.) Certainly, then, letters informing representatives of the Holy Temple of Islam that defendant

---

[6] Defendants do not seek to exclude the entire letter to defendant Abdul Sharrief Muhammad, but only certain portions which they claim to be irrelevant or hearsay.

-11-

Chavis was persistently engaging in such conduct are relevant.

Although the letters contain out-of-court statements, they do not constitute hearsay because they are not being offered to prove the truth of the matters asserted therein. Rather, plaintiff seeks to admit or refer to the letters for the fact that they were sent and received[7] and for the effect they had on the recipients. See Datskow v. Teledyne Continental Motors Aircraft Prods., 826 F. Supp. 677, 684-85 (W.D.N.Y. 1993) (admitting letters "for the limited purpose of showing notice [and] knowledge on behalf of [the defendant]" and explaining that the letters were not hearsay because they were not offered to show the truth of their contents). They are therefore admissible. The court will instruct the jury on the limited purposes for which they may consider the letters, and will address any authenticity issues at trial.

8. Third-Party Correspondence

Defendants also seek to exclude correspondence and testimony from Monique Swift concerning defendant Chavis. Ms. Swift testified in her deposition that on February 27, 1999 defendant Chavis summoned her to his hotel room and made physical sexual advances toward her. (See Pl.'s Opp. at 5 (citing Swift Dep. at 263-72).) In July 1999, Ms. Swift allegedly sent a Report of Misconduct to defendant Abdul Sharrieff Muhammad in which she described the incident. (See Defs.' Ex. B.) Defendants argue that Ms. Swift's complaint has "no bearing whatsoever on the issues of Plaintiff's claims" and constitutes inadmissible hearsay. (Defs.' Mem. at 5-6.)

Again, notice of an employee's propensity to engage in injurious conduct is

---

[7] Defendant Abdul Sharrieff Muhammad denies having received plaintiff's letter, dated July 21, 1999, or learning about the other written complaints plaintiff claims to have sent. Whether or not he did will be a question of fact for the jury.

highly relevant to a claim for negligent supervision or retention.  See Brannon v. Tarlov, 986 F. Supp. 146, 150 (E.D.N.Y. 1997) ("An essential element of a negligent retention claim is that the employer knew or should have known of the employee's propensity for the conduct that caused the injury").  Ms. Swift's written complaint bears on the issue of notice.[8]  The credibility of her allegation is for the jury to consider.  As explained above, her complaint falls within a well-recognized exception to the hearsay rule.  See, e.g., Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) ("[T]he reports cited by plaintiffs would not be hearsay if they were offered for the purpose of proving something other than the truth of the matters stated therein, such as whether appellees had notice").  This evidence is therefore admissible.

9.  Private Discussions Between Plaintiff and Defendant Chavis

Defendants seek to exclude testimony from plaintiff concerning any conversations she had with defendant Chavis or third parties "not related to her claims of negligent hiring, supervision and retention."  Specifically, defendants seek to exclude testimony concerning the conversations plaintiff described in her complaint letters, attached to defendants' submission as Exhibit B.  (See Reply to Plaintiff's Opposition to Defendants' Motions In Limine, dated Dec. 30, 2005 ("Defs.' Reply"), at 10-11.)  Citing Fed. R. Evid. 403, they argue that "such private

---

[8] Defendants correctly note that evidence of a defendant's "other crimes, wrongs, or acts" is not admissible under Federal Rule of Evidence 404(b) to prove character or propensity. See Fed. R. Evid. 404(b); United States v. Gordon, 987 F.2d 902, 908 (2d Cir. 1993).  Therefore, this evidence is inadmissible against defendant Chavis to prove that he engaged in the alleged conduct.  However, the evidence *is* admissible against defendants Muhammad's Holy Temple of Islam and Abdul Sharrief Muhammad to prove notice.  See Daniels v. Loizzo, 178 F.R.D. 46, 48 (S.D.N.Y. 1998) (evidence of individual defendants' past misconduct was admissible to prove the municipal defendant's liability for negligent hiring, training, and supervision, but was inadmissible against the individual defendants).  The court will give the jury a limiting instruction on this issue at trial.

discussions and comments are inadmissible because the probative value is substantially outweighed by the danger of unfair prejudice, confusing of the issues as well as misleading the jury. . . ." (Id. at 11.)

In her letters, plaintiff described various encounters with defendant Chavis, all of which are highly relevant to her claims against him for battery and intentional infliction of emotional distress. To the extent she described those encounters to others who either had authority to act with respect to them or conveyed the information to those who did, plaintiff's discussions are clearly probative with respect to her claims for negligent hiring, supervision and retention. As explained, whether or not defendants Muhammad's Holy Temple of Islam, Inc. and Abdul Sharrief Muhammad had actual or constructive knowledge of Chavis's conduct will be a question of fact for the jury.

Rule 403 allows the court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Unfair prejudice" is "prejudice other than that which flows from evidence because the evidence tends to prove the adversary's point." Evans v. Port Auth. of New York and New Jersey, No. 02 Civ. 3482, 2005 WL 2427890, at *2 (S.D.N.Y. Oct. 3, 2005). In this case, I find that the probative value of the evidence outweighs any danger of unfair prejudice to defendants. The court will give the jury careful instructions with respect to the consideration of evidence, limiting the jury's consideration of evidence where appropriate to specific defendants or for specific purposes.

10. Evidence of Threats Against Plaintiff

Next, defendants seek to exclude testimony that plaintiff was the subject of harassment and threats, arguing that they "were not made aware of these allegations of continued harassment until this lawsuit was filed." (Defs. Reply at 12.) Defendants further contend that, at her deposition, plaintiff "could not name or identify one individual to have made a direct threat against her" and "testified that she received no direct threats, and that no registered Muslim of Mosque No. 7 made threats against her." (Id. (citing Deposition of Anita Williams, dated Dec. 3, 2004, at 192, 195, 196).) However, defendants do not deny that this evidence is highly relevant to plaintiff's claim against Chavis for intentional infliction of emotional distress. Moreover, whether plaintiff was the subject of behavior that could reasonably have been perceived as threatening or harassing, and whether defendants Muhammad's Holy Temple of Islam, Inc. and Abdul Sharrief Muhammad had actual or constructive knowledge of that conduct, are issues of fact for the jury's consideration. Defendants' motion is denied at this time. Again, the court will provide appropriate limiting instructions at trial.

11. Press Articles Concerning Plaintiff's Lawsuit

Finally, defendants seek to exclude articles that appeared in the Village Voice regarding the instant case. Plaintiff does not oppose this request. The motion is granted.

SO ORDERED.

Dated: Brooklyn, New York
February 8, 2006

/s/
ROBERT M. LEVY
United States Magistrate Judge